## Monarch Coal & Coke Company v. W. E. Gunn & Company.

(Decided November 16, 1928.)

### Appeal from Bell Circuit Court.

1. Sales.—In action by buyer of coal for seller's breach of contract to make deliveries as required, in which it appeared that there was a sufficient supply of cars to enable the defendant to comply

with the contract, but that cars were used for delivering coal to other customers, it was no defense that provision on defendant's letterhead, on letter containing offer to furnish the coal, stated that contracts were subject to car supply and other contingencies beyond defendant's control.

2.  Sales.—Measure of damages for defendant's failure to make deliveries of coal as agreed was difference between contract and market price of the coal at the mine, and damages were not limited to those occasioned by plaintiff's breach of its contract to redeliver to third party, though defendant may have known that plaintiff was purchasing the coal for resale under another contract.

3.  Sales.—Limitation of plaintiff's damages, for defendant's breach of contract to make deliveries of coal, to those recoverable by reason of plaintiff's breach of contract with third party for resale, entitles plaintiff to anticipated profits on coal which defendant failed to deliver, in addition to difference between market value and contract price of the coal.

4.  Appeal and Error.—Instruction limiting plaintiff's recovery for defendant's failure to make deliveries of coal to damages occasioned plaintiff by resulting breach of its contract with third party for resale and redelivery was more favorable than defendant deserved and error therein was therefore not available to defendant as ground for reversal, though no proof was introduced as to market price of coal during part of period covered by the contract with the third party.

DAVIS & HARRISON for appellant.

JAMES H. JEFFRIES for appellee.

## OPINION OF THE COURT BY JUDGE REES—Affirming.

At the time the contract was made out of which this litigation arose, the Monarch Coal & Coke Company and the Lower Hignite Coal Mining Company were engaged in the coal mining business in Bell county, Ky. Their mines were located in the same vicinity, and the two companies were producing practically the same character of coal. The Lower Hignite Coal Mining Company, a corporation, was dissolved in May, 1920, and all of its property, including choses in action, was transferred to W. E. Gunn and Lelia B. Gunn, who were the only stockholders, and who have since that time conducted the business as a partnership under the name of W. E. Gunn & Co. For convenience, we will hereafter refer to the Lower Hignite Coal Mining Company and its successor, W. E. Gunn & Co., as the plaintiff, and the Monarch Coal & Coke Company as the defendant.

On August 9, 1916, plaintiff and defendant entered into a contract by which the defendant agreed to furnish the plaintiff two cars of nut and slack coal per week until April 1, 1917, at the price of 80 cents per ton, f. o. b. mines. The period of time covered by the contract was 34 weeks and thus called for the delivery of 68 cars of coal. Defendant furnished only eight cars. At the time the contract was made, plaintiff had an offer from B. H. Wess Grain & Coal Company of Cincinnati, Ohio, to purchase 4,500 tons of nut and slack coal at 90 cents per ton, f. o. b. mines, shipment to begin at once, and the contract to expire on the 1st day of August, 1917. Plaintiff had contracted the output of its mine until April 1, 1917, and, in order to close the contract with the Wess Company, it was necessary for it to procure from another producer a sufficient amount of coal to fill the contract until April 1, 1917, at which time it could supply the coal called for under the Wess contract with its own production. The contract with defendant was made for that purpose.

On August 10, 1916, plaintiff accepted the offer of the B. H. Wess Grain & Coal Company, thereby obligating itself to furnish to the Wess Company two cars of nut and slack coal per week for 51 weeks. It delivered to the B. H. Wess Grain & Coal Company 30 cars of coal, but failed to deliver the remaining 72 cars due under the contract.

The B. H. Wess Grain & Coal Company sued the plaintiff for damages in the United States District Court for the Eastern District of Kentucky for the breach of the sales contract of August 10, 1916, and recovered a verdict for $4,500, which, with interest accrued to the time of the trial of this case in the Bell circuit court, amounted to $6,186.77, which was paid by plaintiff. Plaintiff brought this suit against the defendant to recover damages in the sum of $10,000 for the breach of the contract of August 9, 1916.

In an amended petition, plaintiff alleged that, because of the failure of the defendant to furnish the coal contracted for, the plaintiff had been compelled to expend $5,897.09, which included the judgment recovered against it in the federal court; the other items being costs and attorneys' fees incurred in that court and profits on 3,000 tons of coal not delivered.

In the first paragraph of the instruction defining the measure of damages, the court in substance told the jury that the plaintiff was entitled to the difference between

the contract price and the market price of the coal f. o. b. cars at defendant's mine week by week at the rate of two cars per week during the contract period from August 9, 1916, to April 1, 1917, not to exceed in any event, however, the sum of $10,000. Paragraph 2 of the same instruction reads as follows:

"The court further says to the jury that if they believe from the evidence that as a result of the suit of the B. H. Wess Grain & Coal Company against Lower Hignite Coal Company, pending in the United States District Court at London, Kentucky, the said Lower Hignite Coal Company was relieved from part of the damages claimed against it for a breach of the contract of the re-sale of said coal and the sale of other coal, from the Lower Hignite Coal Company to the said B. S. Wess Company, then the court says to the jury that the defendant in this case is entitled to a proportionate diminution of the damages claimed against the defendant now; and if you so believe from the evidence you will allow the defendant such proportional diminution, in which event your verdict cannot be greater than five-sixths (5/6) of $6,186.77, the amount of judgment and interest paid by said Lower Hignite Mining Company in satisfaction of said Wess judgment."

The jury returned a verdict in favor of the plaintiff for "5/6 of $6,186.77," or $5,155.64.

On this appeal from the judgment entered on that verdict, defendant complains only of alleged errors of the trial court in giving and refusing to give instructions. It is first insisted that the court should have submitted to the jury the question as to whether the letter of the defendant of August 9, 1916, containing its offer to furnish two cars of nut and slack coal per week at the price of 80 cents per ton f. o. b. mines, contained a notice that all contracts made by the defendant were subject to car supply and other contingencies beyond its control. It is conceded that the contract was consummated by an exchange of letters. Both the letter containing defendant's offer and the one containing plaintiff's acceptance were destroyed by fire before the trial. Defendant's secretary and treasurer, M. S. Hollingsworth, testified that he wrote the letter making the offer, which was accepted, upon one of the defendant's regular letterheads, upon which was printed the following provision: "All con-

tracts subject to car supply and other contingencies beyond our control." W. E. Gunn, who wrote the letter for plaintiff accepting defendant's offer, denied that defendant's letter contained such a provision. Whether the letter contained the provision claimed by defendant and the legal effect, if it did contain it, we think is immaterial, in view of the evidence.

It is shown by defendant's own witnesses that during the period from August 9, 1916, to April 1, 1917, it shipped from 75 to 100 cars of coal per week, or a total of 600 to 800 cars, and that one-half of the coal shipped was nut and slack. The defendant had no coal contracted for more than a week or ten days in advance, and, while its deliveries of coal to plaintiff were in arrears, it was selling and delivering coal to other customers. In the meantime the market price of coal had greatly increased. While there was not a full supply of cars during all of the period covered by the contract, the supply was sufficient to have enabled defendant to comply with its contract, whereas, after the first few weeks, it made no effort to comply therewith.

It is also insisted that the second paragraph of the instruction quoted above did not properly submit to the jury all of the matters necessary to be known and considered by it in arriving at a correct verdict. It is urged that, as the coal involved was purchased by the plaintiff for a specific purpose, and was so understood and intended by the parties, the measure of its recovery should be restricted to such damage as it suffered in connection with that specific matter as a result of the defendant's default.

Plaintiff introduced proof as to the market value of coal covering the entire period from August 9, 1916, to April 1, 1917, but no proof was introduced as to the market price of coal during the period from April 1, 1917, to August 1, 1917. The damages recovered by the B. H. Wess Grain & Coal Company against plaintiff were for the failure of plaintiff to deliver 60 cars of coal during the period from August 10, 1916, to April 1, 1917, and 12 cars between April 1, 1917, and August 1, 1917. It is argued that the market price of coal may have increased after April 1, 1917, and that the damages awarded to Wess & Co. for failure to deliver the 12 cars of coal were greater in proportion than the damages awarded for failure to deliver the 60 cars of coal due to

be delivered before April 1, 1917. We think this contention, however, is without merit, since paragraph 2 of instruction·No. 2 was more favorable to defendant than it was entitled to. Although defendant may have known that plaintiff was purchasing the coal in question from it for the purpose of fulfilling a contract with a third party, yet, under the circumstances, plaintiff's damages were not limited to such as were occasioned by the breach of its contract with the third party. Plaintiff and the third party could have canceled their contract or plaintiff could have fulfilled that contract by shipping other coal, and defendant would still be required to comply with its contract, and, if it failed, plaintiff's measure of damages would be as defined in paragraph 1 of instruction No. 2. As thus measured, there was evidence authorizing the jury to find the damages to be more than $5,900. Furthermore, if plaintiff is to be limited in the amount of damages recoverable by it by reason of its contract with the Wess Grain & Coal Company, it was entitled, in addition to the damages authorized by paragraph 2 of instruction No. 2, to the profit it would have received on the 3,000 tons of coal undelivered. This element of damages was not submitted, and defendant received the benefit of this error.

Perceiving no error prejudicial to appellant's substantial rights, the judgment is affirmed.